No. 13-1721(L)

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### FIRST PROFESSIONALS INSURANCE COMPANY
*Plaintiff*

v.

### KYRSTEN E. SUTTON, M.D.

*Defendant/Third Party*
*Plaintiff—Appellee*

v.

### THE MEDICAL PROTECTIVE COMPANY

*Third Party Defendant—Appellant*

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR DISTRICT OF SOUTH CAROLINA (CHARLESTON DIVISION)

### BRIEF OF APPELLEE KYRSTEN E. SUTTON, M.D.

George J. Kefalos
Oana D. Johnson
GEORGE J. KEFALOS, P.A.
46-A State Street
Charleston, South Carolina 29401
(843)722-6612
*Counsel for Kyrsten E. Sutton, M.D.*

## ORAL ARGUMENT REQUESTED

21402002v1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iv

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUE ........................................................................ 1

INTRODUCTION ..................................................................................... 2

STATEMENT OF THE CASE ................................................................ 3

STATEMENT OF FACTS ....................................................................... 8

    A.    Dr. Sutton Has Maintained Continuous Malpractice Insurance And Received The Notice Of Intent To Sue During FPIC's Coverage Period ...................................................................... 8

    B.    FPIC Identified The Nathan Moore Claim As One That Pre-dated The Policy's Effective Date And Then Relied On Exclusionary Language In An Effort To Negate Coverage ............. 10

        1.    The St. Francis Letter Was Merely A Courtesy Letter Informing Dr. Sutton Of The Hospital's Receipt Of A Records Request .................................................................. 11

        2.    Dr. Sutton Had No Independent Recollection Of Amy Moore Or Knowledge Of An Adverse Outcome That Might Have Triggered The Record Request, And She Was Not Concerned About The Courtesy Letter .................. 12

        3.    FPIC Began Characterizing Dr. Sutton's Telephone Inquiry As "Reporting [An] . . . Incident To MedPro, But Dr. Sutton Never Agreed to FPIC's Characterization ............ 13

SUMMARY OF ARGUMENT ................................................................ 15

ARGUMENT .............................................................................................. 16

    A.    Standard of Review ........................................................................ 16

-i-

**TABLE OF CONTENTS**
(continued)

Page

B.   The District Court Inappropriately Relieved FPIC Of Its Burden To Show Exclusion 11(b)'s Applicability When It Found That Notice To MedPro Of A Potential Claim Under Its Coverage Provisions Was No Different Than The Reporting Of A Medical Incident Under FPIC's Exclusion ........................................ 17

  1.   The District Court Never Analyzed The Language Of Exclusion 11(b) Nor Considered Whether FPIC Met Its Burden Of Proof ...................................................................... 17

  2.   In Lieu Of A Particularized Inquiry, The District Court Presumed That Its Earlier Finding Of Notice Of A Potential Claim Under MedPro's Policy Satisfied The Exclusion's Requirements ...................................................... 19

    a.   The Court Found Coverage Under MedPro's Policy Because It Applied A Constructive Notice-Based "Potential Claim" Standard, Not Because Of The Substantive Information Dr. Sutton Conveyed In Her Call .................................................................. 19

    b.   The Court Relied On The Same Constructive Notice-Based "Potential Claim" Standard To Exclude Coverage Under FPIC's Exclusion ................. 21

    c.   FPIC's Exclusion Required A Different Standard Than The Court Employed ............................................ 23

C.   The District Court Failed to "Strongly Construe" Exclusion 11(b) Against FPIC And Applied An Overly Expansive Reading Of The Exclusion Untethered To Its Actual Language ....... 25

  1.   The Operative Facts Were Largely Undisputed And Prevented Application Of The Exclusion If Strongly Construed Against FPIC ........................................................ 25

  2.   The Court Adopted An Overly Expansive View Of The Exclusion That Did Not Strictly Construe The Exclusion Against FPIC .......................................................... 27

-ii-

# TABLE OF CONTENTS
### (continued)

**Page**

      a.    Dr. Sutton Did Not Report A Medical Incident; She Reported Only The Contents Of The St. Francis Letter ................................................................ 28

      b.    The Policy Never Defines "Reported" And That Term Should Have Been Construed Against FPIC ....... 30

      c.    Dr. Sutton Had No Memory Of A "Medical Incident" To Report ...................................................... 31

CONCLUSION .................................................................................... 35

REQUEST FOR ORAL ARGUMENT ................................................ 36

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(E) OR 32(A) ............... 37

CERTIFICATE OF SERVICE ............................................................. 38

-iii-

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Auto Owners Ins. Co. v. Personal Touch Med Spa, LLC*,
   763 F. Supp.2d 769 (D.S.C. 2011) ................................................. 23

*Boggs v. Aetna Cas. & Sur. Co.,*
   252 S.E.2d 565, 568 (S.C. 1979) ................................................. 23

*Fort Sumter Tours, Inc. v. Babbitt*,
   66 F.3d 1324 (4th Cir. 1995) .................................................... 17

*Huggins v. Tri-County Bonding Co.*,
   337 S.E.2d 12 (W. Va. 1985) .................................................... 17

*M & M Corp. of S.C. v. Auto-Owners Ins. Co.*,
   701 S.E.2d 33 (S.C. 2010) ................................................... 18, 23

*National Fire Insurance v. Bartolazo,*
   27 F.3d 518 (11th Cir. 1994) ................................................ 29, 30

*Owners Ins. Co. v. Clayton*,
   614 S.E.2d 611 (S.C. 2005) ................................................. 18, 23

*Roanoke Cement Co, L.L.C. v. Falk Corp.*,
   413 F.3d 431 (4th Cir. 2005) .................................................... 17

*S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*,
   638 S.E.2d 103 (S.C. Ct. App. 2006) ............................................ 18

*Scarborough v. Ridgeway,*
726 F.2d 132, 135 (4th Cir. 1984) ................................................. 17

*Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill.*,
   185 F. Supp.2d 614 (D.S.C. 2001) .............................................. 23

*Walde v. Assoc. Ins. Co.*,
   737 S.E.2d 631 (S.C. Ct. App. 2012) ........................................... 23

21402002v1

*Williams v. Sandman,*
   187 F.3d 379, 381 (4th Cir. 1999) .................................................................... 17

**FEDERAL RULES**

Fed. R. App. P. 4(a)(1)(A) ............................................................................... 1

Fed. R. App. P. 28(i) ......................................................................................... 15

Fed. R. App. P. 28.1(e)(2) ................................................................................ 37

Fed. R. App. P. 32(a)(5) ................................................................................... 37

Fed. R. App. P. 32(a)(6) ................................................................................... 37

Fed. R. App. P. 32(a)(7)(B)(iii) ....................................................................... 37

**STATUTES**

28 U.S.C. § 1291 ............................................................................................... 1

28 U.S.C. § 1332 ............................................................................................... 1

## JURISDICTIONAL STATEMENT

The district court exercised subject matter jurisdiction over this insurance coverage dispute under 28 U.S.C. § 1332. The plaintiff, First Professionals Insurance Company ("FPIC"), is a Florida citizen; defendant and third-party plaintiff, Kyrsten Sutton, M.D. ("Dr. Sutton") is a South Carolina citizen; and the amount in controversy exceeds $75,000.00. Dr. Sutton filed a counterclaim against FPIC and a third-party complaint against The Medical Protective Company ("MedPro").

On May 1, 2013, the district court disposed of all claims in this action by entering a final judgment (i) in Dr. Sutton's favor on her third-party complaint against MedPro, and (ii) in FPIC's favor on its complaint against Dr. Sutton and her counterclaim. MedPro appealed on May 30, 2013, and Dr. Sutton cross-appealed on May 31, 2013. This Court's jurisdiction thus rests on 28 U.S.C. § 1291, and these consolidated appeals are timely under Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUE

Whether the district court ignored controlling South Carolina law in its application of FPIC's Exclusion 11(b) by relieving FPIC of its burden of proof, failing to strictly construe exclusionary language against FPIC, and presuming that a notice of a "potential claim" under MedPro's insuring

-1-

agreement was tantamount to a "reported" "medical incident" negating coverage under FPIC's exclusion?

## INTRODUCTION

This appeal concerns an uncomplicated but important matter of contract interpretation. The district court denied coverage for Dr. Sutton under the FPIC insurance policy on the basis of one narrow exclusion without meaningful analysis and without holding FPIC to the burden of proof it bore under South Carolina law. By presuming that a finding of coverage under the terms of MedPro's insuring agreement warranted exclusion of coverage under the terms of FPIC's Exclusion 11(b), the district court not only relieved FPIC of its burden to show that the exclusion applied, but it enlarged the language of an exclusion that should have been construed most strongly against FPIC.

The errors that Dr. Sutton raises on appeal are pure legal conclusions by the district court; indeed, FPIC and Dr. Sutton agreed on many of the facts underlying the Exclusion 11(b) analysis. Nevertheless, the district court bypassed the actual language of FPIC Exclusion 11(b) in favor of resolving a disputed fact under the terms *of MedPro's policy*, and then it relied on that determination to frame its analysis of the FPIC Policy. This reversal of sequence muddled the applicable standards.

-2-

As a matter of law, the district court erred by equating distinct provisions that cannot be viewed from the same perspective. When the undisputed facts are applied to the language of Exclusion 11(b) and it is properly construed against FPIC, Dr. Sutton is entitled to reversal of the district court's judgment.

## STATEMENT OF THE CASE

The current dispute arises from FPIC's efforts to exclude coverage to Dr. Sutton, an obstetrician and gynecologist, under her malpractice insurance policy (the "FPIC Policy") for a claim filed against her in South Carolina state court in 2011 on behalf of a child allegedly deprived of oxygen and injured in 2004 during labor and delivery (the "Nathan Moore Claim"). [JA0001-11, JA0013, JA0665]  In January 2012, FPIC filed a complaint against Dr. Sutton in the District of South Carolina seeking a judicial determination that several exclusions prevented coverage for the Nathan Moore claim.  [JA0001-11, JA0013]

Neither FPIC nor Dr. Sutton disputed that the Nathan Moore Claim triggered coverage under the insuring agreement of the FPIC Policy [*see generally* JA0656-64 (FPIC reservation of rights letter)], and Dr. Sutton tendered the Nathan Moore Claim immediately after she received a notice of intent to sue from Amy and Richard Moore, as parents and guardian *ad litem* for Nathan Moore (the "Moores").  FPIC advocated for a no-coverage finding because it deemed Dr. Sutton's 2008 telephone call to her prior carrier MedPro concerning a

-3-

"courtesy notification" of a request for Amy Moore's records to be a "reported" "medical incident" triggering policy exclusions. [JA0018-19]

Dr. Sutton never denied that she called MedPro in 2008 to inquire about an "unusual" courtesy letter from St. Francis Hospital regarding a records request it received (the "St. Francis Letter" or the "Letter"), but she disagreed with FPIC's characterization of that call, and she counterclaimed against FPIC seeking coverage for the Nathan Moore Claim. [JA0032-34]  Dr. Sutton maintained that she could not have "reported" anything to MedPro at that time because she recalled no details about the person whose records were requested and because she provided no information to MedPro beyond the contents of the St. Francis Letter. [JA0032-34]

Dr. Sutton consistently sought coverage from FPIC during the underlying litigation [JA0032-34, JA0073-89], as did the Moores, who intervened as defendants in connection with FPIC's complaint.    [JA0028-30, JA0037-69] Dr. Sutton also pled in the alternative against MedPro [JA0034-35], although she continued to deny that she had any knowledge of a potential claim by Nathan Moore during the time that she had insurance coverage from MedPro. [JA0035]  Dr. Sutton denied any knowledge of a "medical incident" or even patient dissatisfaction at the time FPIC claimed she "reported" a medical incident. [JA0035: ¶ 35]  She argued that if the court found that her 2008 call to MedPro

-4-

barred coverage under the FPIC Policy, then the MedPro policy should cover the Nathan Moore claim instead because "if there was a potential claim, then it should be insured by MedPro as she gave MedPro notice of the request for medical records." [JA0035: ¶ 39; *see also* JA0071]

On October 22, 2012, FPIC moved for summary judgment on its policy exclusions. [JA0007: Entry 52] FPIC's summary judgment motion, in pertinent part, asked the court to interpret Dr. Sutton's call conveying the contents of the St. Francis Letter as a "reported . . . medical incident" precluding coverage under Exclusion 11(b). [JA0140][1] FPIC did not dispute Dr. Sutton's recollection that she called MedPro regarding a letter she received from the hospital concerning a medical records request it had received before the FPIC Policy's effective date. However, FPIC argued that "Dr. Sutton reported the medical incident to MedPro when she reported the receipt of the 2008 Letter from St. Francis Hospital." [JA0138] MedPro also moved for summary judgment under the insuring agreement of its policy and argued, in relevant part, that no evidence supported Dr. Sutton's recollection of calling MedPro in 2008. [JA0135-36] Dr. Sutton maintained that she had no specific belief that a claim or potential claim would be made based on the 2008 St. Francis Letter. [JA0078-80]

---

[1] FPIC also moved for summary judgment on sub-parts (a) and (c) of Exclusion 11, and the district court denied the motion on those grounds as well. [JA0136-42] Only sub-part (b) of Exclusion 11 is at issue in this appeal; the district court declined to rule on the applicability of any other provisions once it determined that Exclusion 11(b) negated coverage. [JA0726-27 n. 1]

After oral argument, the district court denied both motions on March 6, 2013. [JA0130-43] Although a dispute between Dr. Sutton and FPIC gave rise to the case in the first instance, the district court chose to begin its summary judgment analysis with the MedPro policy terms instead. [JA0094 ("I want to reconfigure the argument . . . . to hear from Med Pro first, and then FPIC . . . . [because] that conceptually in my mind makes it simpler"), JA0134-35] The court denied MedPro's motion after identifying a factual dispute regarding "whether [Dr. Sutton] made a report of a potential claim for Nathan Moore to MedPro." [JA0136] Thereafter, the district court denied FPIC's motion for summary judgment and found, as to Exclusion 11(b), "that an issue of material fact remains as to whether or not Dr. Sutton's phone call to Med Pro constituted a report of 'any act, error or omission in the providing of or failure to provide professional services to a patient.'" [JA0141] The district court set the matter for a March 25, 2013 bench trial. [JA0127]

At trial, only Dr. Sutton and MedPro Claims Specialist Joseph Costy testified live. The court also admitted deposition testimony from two FPIC representatives, Laura Archer [JA0350-51 (read into record and admitted as Exhibit 38)], and Eric Roberts [JA0350 (designated portions admitted as Exhibit 37)].

-6-

On May 1, 2013, the district court entered Findings of Fact and Conclusions of Law [JA0714-28] and Final Judgment [JA0729]. The district court's factual findings were consistent with its view of the facts on summary judgment in the light most favorable to Dr. Sutton [JA0715-20], and the court again chose to begin its legal analysis with the MedPro policy terms. [JA0721]  The district court found that Dr. Sutton testified credibly that she called MedPro about the St. Francis Letter, and it determined that her alleged call provided notice of a potential claim to MedPro and triggered coverage for the Nathan Moore Claim. [JA0723-25]

The district court then turned to the FPIC Policy, considering only one of the exclusions raised by FPIC and declining to address any of FPIC's other arguments. [JA0726-27 n.1]  The court determined that the "Med Pro call regarding the St. Francis letter" satisfied Exclusion 11(b) [JA0727: ¶ 13], which prevents coverage for any "injury" or "damages" "arising out of a "medical incident . . . which prior to the effective date of this policy was . . . reported to any insurer." [JA0644: Exclusion 11(b)(1)]  The court did not interpret either "medical incident" (which was a defined term) or "reported" under the terms of FPIC's Exclusion 11(b) [*see* JA0726-27], and it gave no weight to Dr. Sutton's testimony that she never intended to give notice of a potential claim when she called MedPro in 2008 and never thought that a claim would be made by either Mrs. Moore or Nathan Moore.

-7-

[JA0723-725]    The district court determined that "the insured's personal knowledge or intent is not relevant" to Exclusion 11(b).  [JA0727: ¶ 12]

This appeal followed. [JA0730-33]

### STATEMENT OF FACTS

**A.    Dr. Sutton Has Maintained Continuous Malpractice Insurance And Received The Notice Of Intent To Sue During FPIC's Coverage Period**

Dr. Sutton has carried professional malpractice insurance continuously – with no lapses in coverage – throughout her career in obstetrics and gynecology. FPIC insured Dr. Sutton pursuant to a claims-made-and-reported policy from May 1, 2009 to May 1, 2012, with a retroactive date of May 1, 2003.  [JA0151:12-19; JA0606] Immediately preceding FPIC's coverage, MedPro insured Dr. Sutton pursuant to a claims-made-and-reported policy from May 1, 2004 to May 1, 2009, also with a May 1, 2003 retroactive date. [JA 0150:19-21, JA0592]  Although the origin of this coverage dispute – the delivery of Nathan Moore – occurred in June 2004 [JA0159:9-11], the Notice of Intent to Sue was not received by Dr. Sutton until May 3, 2011, after the FPIC Policy was in effect.  [JA0152:12-16]

Dr. Sutton immediately forwarded the Notice of Intent to Sue to FPIC after she received it in May 2011.  [*See generally* JA0656-64 (FPIC reservation of rights letter); *see also* JA0636 (Definitions) (defining "Claim" to include "a notice of intent to initiate litigation")]  The Notice of Intent to Sue claimed that Nathan

-8-

Moore suffered injury during his labor and delivery[2] because of Dr. Sutton's alleged malpractice, which allegedly resulted in his later diagnosis of cerebral palsy. [JA0152:11-16]

There was no dispute that the Nathan Moore Claim triggered coverage under the insuring agreement of the FPIC Policy, which covers "damages because of bodily injury caused by a medical incident, which occurs after the retroactive date and prior to the end of the policy period stated in the Coverage Summary resulting from . . . [y]our providing or failure to provide professional services to a patient." [JA0639-40 ("Coverage Provided To You"); *see also* JA0641 ("Claims Made and Reporting Requirements") ("This policy applies only to . . . claims first made against an insured and reported to us in writing during the policy period stated in the Coverage Summary")]

---

[2]    Although Mrs. Moore's labor progressed normally without any concerning issues [JA0171:1-9], baby Nathan was "purplish and . . . floppy" at birth with the umbilical cord wrapped one and a half times around his ankle. [JA0171:19-24, JA0176:3-8; *see also* JA0563] Given his condition, baby Nathan was "intubated and given oxygen, suctioned, and had some chest compressions briefly" before taking his first breath at 18 minutes. [JA0173:12-24] Dr. Sutton continued to treat Mrs. Moore after Nathan's birth and received encouraging news about his condition and prognosis several months later: "The baby has been doing very well and currently the pediatricians and the pediatric neurologist are hopeful that the baby ***will have little or no residual [deficit]*** from presumed perinatal seizure disorder." [JA00532 (emphasis added); *see also* JA0187:13-JA0188:2]  Based on these reports, Dr. Sutton concluded that "the baby was going to do great," [JA0187:19-20] and that his prognosis was "excellent." [JA0231:10-13] According to Dr. Sutton (and no one at trial disputed her testimony), babies presenting at birth like baby Nathan end up "perfectly okay" the "majority" of the time." [JA0209:14-21]

Dr. Sutton received no complaints from the Moores [JA0230:24-JA0231:2], and Mrs. Moore went back to Dr. Sutton for a tubal ligation in September 2004. [JA0533]  ***Dr. Sutton did not learn that Nathan had been diagnosed with cerebral palsy or that he was developmentally delayed until receipt of the notice seven years later.*** [JA0239:15-25]

The FPIC Policy defines "medical incident" as "any act, error or omission in the providing of or failure to provide professional services to a patient by you or by persons described in the Individual Professional Liability Coverage Part for whom you are determined to be legally responsible." [JA0636] In addition, the Policy treats as a "single medical incident" all "bodily injury(ies) caused by a course of treatment(s) of a . . . mother and fetus (or fetuses) from conception through postpartum care . . . ." [JA637] "Bodily injury, in turn means "physical injury, sickness or disease; mental or emotional distress; or death sustained by a patient, which is neither expected nor intended from the standpoint of any Insured." [JA0636]

**B.    FPIC Identified The Nathan Moore Claim As One That Pre-dated The Policy's Effective Date And Then Relied On Exclusionary Language In An Effort To Negate Coverage**

After promptly notifying FPIC of the Nathan Moore Claim, Dr. Sutton spoke with FPIC employee Eric Roberts on May 10. [JA0152:20-25] Roberts immediately began questioning Dr. Sutton about whether she had reported the Nathan Moore Claim to a prior insurer. [JA0152:20-25] Exclusion 11 of the FPIC Policy prevents coverage if: "(a) the insured knew or could have reasonably foreseen from the facts and circumstances that a claim might be made during the policy period as a result of the incident; or (b) the medical incident had been

-10-

reported to any insurer; or (c) the medical incident was disclosed or should have been disclosed on the FPIC application." [JA0644]

Dr. Sutton recalled, in response to Roberts' prompting, telling him: "I thought I received a notification from St. Francis [Hospital] that they had gotten a records request several years previously and that I wasn't sure if it was the same patient." [JA0156:9-15] Dr. Sutton could not remember the insurer's name during her conversation with Roberts, and she told him that she thought she had received the St. Francis Letter in 2007. [JA0654]

### 1.   The St. Francis Letter Was Merely A Courtesy Letter Informing Dr. Sutton Of The Hospital's Receipt Of A Records Request

The St. Francis Letter expressly stated that it was a "courtesy notification" to Dr. Sutton that the hospital's Risk Management Department's *routine review of all medical record requests received at two hospitals* showed a request to St. Francis Hospital for Amy Moore's records. [JA0596] The St. Francis Letter did not identify Mrs. Moore as a potential claimant nor did it mention Nathan Moore or the Nathan Moore Claim. Risk Management explained in the St. Francis Letter that it routinely reviewed medical requests in an effort "to identify potential claims within our health system," but it did not state or imply that the hospital had reviewed the requested records or identified an adverse outcome or potential claim. [JA0596]

-11-

Dr. Sutton thought the St. Francis Letter was "unusual" because she had never before received a notification from a hospital advising her that it had received a request for medical records, so she contacted MedPro "because it was an unusual letter that I hadn't had any familiarity with and I just didn't know what I should do with it, what it meant."  [JA0157:25-JA0158:3; *see also* JA0169:21-JA0170:2 ("I mean, it said it was a routine, you know, review, and I wasn't really sure what to make of it.")]  During her call to MedPro, Dr. Sutton "basically read the letter to them." [JA0158:12-14]

> ### 2.  Dr. Sutton Had No Independent Recollection Of Amy Moore Or Knowledge Of An Adverse Outcome That Might Have Triggered The Record Request, And She Was Not Concerned About The Courtesy Letter

Dr. Sutton conveyed no other information to MedPro because she recalled no information that would give context to the St. Francis Letter.  When she received the St. Francis Letter, Dr. Sutton had no memory of Amy Moore, could not identify her as a current or prior patient, and recalled no details about Mrs. Moore's treatment (if any) including whether it was obstetric or gynecologic. [JA0159:5-6, JA00170:9-12, JA0209:8-10]  Dr. Sutton did not associate the St. Francis Letter or the name "Amy Moore" with Nathan Moore or his birth (which she did not remember, either). [JA0209:11-13]  Dr. Sutton recalled no adverse outcome at all. [JA0255:17-24]  In fact, at the time Dr. Sutton received the Notice of Intent to Sue and contacted FPIC, she did not have Amy Moore's records

readily available as she had left the practice where Amy Moore had been seen. [JA0150:1-9; JA0194:6-15]

Dr. Sutton did recall, however, that she was "[n]ot particularly concerned" about the Letter when she received it and that she did not discuss with MedPro any acts, errors or omissions in connection with Mrs. Moore's labor and delivery. [JA0157:20-JA0158:14; *see also* JA0208:5-9; JA0157:17-21 (Dr. Sutton testifying that she was "not particularly" concerned about the 2008 St. Francis Letter)]  After all, she confirmed that it was "common" for her patients to be involved in situations where a request for medical records is made, such as by a defense attorney in an automobile accident case. [JA0208:10- JA0209:2]

Dr. Sutton received no further communication from MedPro about the St. Francis Letter [JA0158:15-20], nor did she follow up with MedPro or St. Francis. [JA0158:15-JA0159:4]  Dr. Sutton did not believe she should take any other action because she did not view the Letter as a notice of a potential claim [JA0233:11-16], and did not have any reason to believe that she would be sued for something that occurred in 2004. [JA0234:12-15]

### 3. FPIC Began Characterizing Dr. Sutton's Telephone Inquiry As "Reporting [An] . . . Incident" To MedPro, But Dr. Sutton Never Agreed to FPIC's Characterization

When Roberts learned that Dr. Sutton had called another insurer about the St. Francis Letter, he wasted no time writing MedPro and contending that

-13-

Dr. Sutton had reported a "potential claim" to MedPro in 2007. [JA0655] According to FPIC, Dr. Sutton "personally recall[ed] reporting this incident to [MedPro] as a precautionary measure sometime in 2007 when she was insured there. Specifically, Dr. Sutton received a request for records from the representative of Nathan Moore in 2007 and met her policy requirement by notifying [MedPro] of a potential claim." [*Id.*] Dr. Sutton, however, made clear at trial that FPIC's characterization of her conversation with Roberts was false. [JA0156:6-8 (Q: "Is that what you had indicated to Mr. Roberts in your conversation?"; A: "I don't believe so.")]

Notwithstanding FPIC's attempt to characterize Dr. Sutton's telephone call as something it is not, Dr. Sutton's coverage position has been clear and consistent: the Nathan Moore Claim is covered as a Claim first made under her FPIC Policy. Dr. Sutton pled against MedPro only in the alternative as a failsafe substitute should the district court find (as it did) that coverage was excluded under her FPIC Policy. [JA0034-35][3]

---

[3] Dr. Sutton maintains that stance on appeal and continues to view her position regarding coverage under the MedPro policy as an ***alternative*** argument. Throughout this litigation, MedPro has denied that Dr. Sutton called in 2008 to inquire about the St. Francis Letter, noting that it had no record of a call nor took any action as a result thereof. [JA0293:10-25] Although the district court ultimately found Dr. Sutton's recollection of the call credible [JA0718], that factual dispute between Dr. Sutton and MedPro is not determinative in Dr. Sutton's appeal of the FPIC ruling. No matter the historical differences between MedPro and Dr. Sutton, their views are aligned on the one issue critical to coverage under the FPIC Policy: Any inquiry by Dr. Sutton in 2008 concerning a letter she received from the hospital about a medical records request it received was not (and could not have been) the report of a medical incident when Dr. Sutton

-14-

Pursuant to Fed. R. App. P. 28(i), Dr. Sutton also incorporates by reference the Statement of Facts set forth in Appellant MedPro's principal brief.

## SUMMARY OF ARGUMENT

The district court failed to abide by controlling South Carolina law in its analysis of Exclusion 11(b).  To negate coverage, FPIC needed **not only** to prove that Dr. Sutton "reported" a "medical incident" as defined in the FPIC Policy to her prior insurer **but also** to overcome strong construction of those terms in Dr. Sutton's favor.  The court held FPIC to neither obligation.

The district court found that Dr. Sutton's call to MedPro about the letter she received advising her of a request for medical records (for a patient she did not remember) was sufficient to put Med Pro on inquiry notice and therefore constituted notice of a "potential claim" under the Med Pro policy.  The fact that the call might constitute notice of a "potential claim" as to Med Pro does not mean that it was notice of a "medical incident" excluded by the FPIC policy.

A "medical incident" under the FPIC policy is distinct from a "potential claim" under the Med Pro policy.  A "medical incident" is defined in the FPIC policy as "any act, error or omission in the providing of or failure to provide

---

did not even recall the person whose records were requested or the treatment provided.  [JA0033-34]

Should this Court determine, with respect to MedPro's appeal, that the district court clearly erred when it credited Dr. Sutton's recollection of the call, Dr. Sutton is still entitled to reversal of the district court's judgment in favor of FPIC on Exclusion 11(b).  The 2008 call is the only "reported" "medical incident" that FPIC alleged in this action and without it FPIC cannot claim entitlement to Exclusion 11(b) on any ground.

professional services to a patient by you or by persons described in the Individual Professional Liability Coverage Part for whom you are determined to be legally responsible."

The district court's error consisted of concluding that providing notice of a potential claim under the Med Pro insuring agreement is the same thing as reporting an "act, error or omission in the providing of or failure to provide professional services to a patient" within the meaning of the FPIC policy exclusion. It is not. The court was so focused on resolving a factual dispute relevant to MedPro's policy that it relieved FPIC of its operative burden and satisfied Exclusion 11(b)'s specific requirements with its own finding that MedPro had sufficient notice of a potential claim. By presuming that Dr. Sutton's 2008 inquiry to MedPro regarding an unusual letter is tantamount to the "reporting" of a "medical incident," the district court adopted an overly expansive reading that is not consistent with South Carolina law. When the exclusionary language is strongly construed against FPIC, as it must be, the undisputed facts require reversal of the district court's judgment for FPIC.

## ARGUMENT

### A.    Standard of Review

This Court "review[s] a judgment following a bench trial under a mixed standard of review—factual findings may be reversed only if clearly erroneous,

-16-

while conclusions of law, including contract construction, are examined de novo." *Roanoke Cement Co, L.L.C. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005) (citing *Williams v. Sandman*, 187 F.3d 379, 381 (4th Cir. 1999); *Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984)). *See also Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1332 (4th Cir. 1995) ("We review *de novo* the district court's construction of the contract" (citing *Nehi Bottling Co., Inc. v. All-American Bottling Corp.*, 8 F.3d 157, 162 (4th Cir. 1993))).

**B.     The District Court Inappropriately Relieved FPIC Of Its Burden To Show Exclusion 11(b)'s Applicability When It Found That Notice To MedPro Of A Potential Claim Under Its Coverage Provisions Was No Different Than The Reporting Of A Medical Incident Under FPIC's Exclusion.**

**1.     The District Court Never Analyzed The Language Of Exclusion 11(b) Nor Considered Whether FPIC Met Its Burden Of Proof**

The district court conducted no particularized analysis of Exclusion 11(b)'s "medical incident" or "reported" terminology before summarily concluding that the "Med Pro call regarding the St. Francis Letter constituted a report of a medical incident." [JA0727: ¶ 13] Such a cursory evaluation permitted FPIC to escape its burden to show the Exclusion's application to the facts of this case under the FPIC Policy. *See Huggins v. Tri-County Bonding Co.*, 337 S.E.2d 12, 16 (W. Va. 1985) (explaining that "a policy must be interpreted on its own terms").

"Insurance policies are subject to the general rules of contract construction." *M & M Corp. of S.C. v. Auto-Owners Ins. Co.*, 701 S.E.2d 33, 35 (S.C. 2010). In South Carolina, courts "interpret insurance policy language in accordance with its plain, ordinary, and popular meaning, except with technical language or where the context requires another meaning. Policies are construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer." *M & M Corp.*, 701 S.E.2d at 35. The court's function "is to enforce an insurance contract as made by the parties, ***and not to rewrite*** or to distort, under the guise of judicial construction." *S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*, 638 S.E.2d 103, 105 (S.C. Ct. App. 2006) (internal quotation omitted) (emphasis added). Notably, "exclusions are ***construed most strongly*** against the insurance company, which also bears the burden of establishing the exclusion's applicability." *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005) (emphasis added).

The district court's order reveals a lack of deliberation concerning the terminology of Exclusion 11(b). The district court did not even mention the definition of "medical incident" used in FPIC's policy – much less explain how Dr. Sutton's call regarding a letter she received from a hospital stating that it had received a request for medical records qualifies as such. [*See* JA0726-27] Moreover, the court never endeavored to define when an incident has been "reported" to a prior insurer, and "reported" is not a term defined by FPIC's policy

-18-

in the exclusionary context. Both the FPIC policy and the MedPro policy rely on the term "reported" as a triggering term of art. But the district court, without recognizing the legal significance of "reported," used that term interchangeably to mean "conveyed" or "provided" when describing Dr. Sutton's call to MedPro. [*See, e.g.,* JA0716-17: ¶ 6; JA0718: ¶ 11 ("she called Med Pro and reported the contents of the St. Francis letter")] The court simply assumed that a "reporting" occurred without further analysis, relieving FPIC of its burden of proof.

### 2. In Lieu Of A Particularized Inquiry, The District Court Presumed That Its Earlier Finding Of Notice Of A Potential Claim Under MedPro's Policy Satisfied The Exclusion's Requirements

The district court impermissibly filled the void in its analysis of Exclusion 11(b) by extending its earlier analysis of MedPro's "potential claim" provision. [JA0726-27] By permitting FPIC to benefit from the court's earlier finding of coverage under the MedPro policy, the court disregarded South Carolina law and allowed its own analysis to satisfy FPIC's burden.

### a. The Court Found Coverage Under MedPro's Policy Because It Applied A Constructive Notice-Based "Potential Claim" Standard, Not Because Of The Substantive Information Dr. Sutton Conveyed In Her Call

Although Dr. Sutton maintains her position that the MedPro Policy should provide coverage if the FPIC policy does not, she has never admitted or stated that she "reported" a claim or potential claim to MedPro that would bar coverage under

-19-

the FPIC policy. Indeed, Dr. Sutton has stated all along that she called MedPro about an unusual letter but "did not notify Med Pro of a ***claim***." [JA0387:18-20 (emphasis added)] The operative provision of MedPro's insuring agreement requires the report of a "potential claim" "[to] include[] all reasonably obtainable information, including the time, place and circumstances of the incident; the nature and extent of the patient's injuries; and the names and addresses of any available witnesses." [JA0722: ¶ 4] Dr. Sutton called MedPro to discuss the St. Francis Letter but admittedly "did not recall any details regarding the treatment rendered to Amy Moore and was unaware of the condition or injuries of Nathan Moore" when she made the call. [JA0723: ¶ 5] Yet, the district court found coverage under MedPro's policy because it concluded that strict compliance with MedPro's reporting requirement was not necessary for MedPro to be on notice of a "potential claim." According to the district court, an insurer can be on notice of a potential claim **even** *"**if the information provided by the insured is insufficient or does not meet the letter of the notice requirements under the policy**."* [JA0722: ¶ 3 (emphasis added)]

The district court applied a constructive or inquiry notice-based standard to the MedPro reporting provision, and then (improperly) went on to use ***this same standard*** to resolve the coverage dispute between Dr. Sutton and FPIC. Instead of focusing on the content or sufficiency of the information Dr. Sutton conveyed in

-20-

her call or her intent in making the telephone call, the court considered whether MedPro could have discovered the existence of a "potential claim" if it conducted its own investigation after the call. In other words, the trial court's decision for purposes of resolving the entire case, including Dr. Sutton's counterclaim against FPIC, depended on whether or not MedPro on its own initiative, such as by requesting medical records or interviewing potential witnesses, could have discovered enough information to suggest to it that Nathan Moore might have a claim against Dr. Sutton. As explained below, this is not the correct analysis under the plain terms of the FPIC Policy.

### b. The Court Relied On The Same Constructive Notice-Based "Potential Claim" Standard To Exclude Coverage Under FPIC's Exclusion

Even though Exclusion 11(b) hinges on the ***reporting*** of a ***medical incident*** (and does not mention notice or the existence of a potential claim), the district court continued its previous focus on the "potential claim" vernacular. The court justified its finding that "the MedPro call regarding the St. Francis letter constituted a report of a medical incident" by citing only two pieces of evidence – both of which mention the term "potential claim" but never reference the report of a medical incident. [JA0726: ¶ 13]

First, the court cited to the St. Francis Letter itself, highlighting that it originated from the Risk Management Department as part of its "ongoing . . .

activities to identify *potential claims*." [JA0727: ¶ 13 (emphasis added)] The court never explained how a notification of requested records satisfies the requirement of a reported medical incident. Moreover, the district court's representation of the St. Francis Letter's significance is misleading. The St. Francis Letter did not identify Mrs. Moore as a potential claimant nor did it imply that the hospital had reviewed the requested records and identified the outcome as a "potential claim." The St. Francis Letter was nothing more than a "courtesy notification" to Dr. Sutton of a request for records identified during a *routine* review of all medical record requests received at two hospitals (one of the activities Risk Management conducts in an effort "to identify potential claims within our health system"). [JA0596]

The only other evidence to which the court cited is Dr. Sutton's 2012 email to Mr. Costy in which she used the words "potential claim" while FPIC was in the process of terminating her malpractice coverage. [JA0727: ¶ 13] The court again failed to explain how this email satisfies FPIC's burden to demonstrate a "reported medical incident," particularly given that Dr. Sutton only used the term "potential claim" four years after it was clear that the Moores, on behalf of their son Nathan, intended to sue her. And, the district court ignored Dr. Sutton's uncontroverted trial testimony that she did not intend her telephone call to MedPro to be notice of a claim or a potential claim at the time she called MedPro in 2008. [JA 238:14-22]

-22-

Regardless, the court undermined any import of Dr. Sutton's characterization when it declared in the preceding paragraph that "*the insured's* personal knowledge or *intent is not relevant*" to Exclusion 11(b). [JA0727: ¶ 12]

Despite the Exclusion's exacting requirement of a reported medical incident, the district court simply borrowed from its earlier "potential claim" analysis to satisfy FPIC's burden for it.

### c. FPIC's Exclusion Required A Different Standard Than The Court Employed

The standards employed by the district court when analyzing *MedPro's policy* do not apply with equal force to FPIC's exclusion because South Carolina law mandates that the district court view exclusionary language through a different lens. *See Auto Owners Ins. Co. v. Personal Touch Med Spa, LLC*, 763 F. Supp.2d 769, 780 (D.S.C. 2011)(quoting *Owners Ins. Co.*, 614 S.E.2d at 614); *Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill.*, 185 F. Supp.2d 614, 617 (D.S.C. 2001) ("The insurer bears the burden of establishing exclusions to coverage." (citing *Boggs v. Aetna Cas. & Sur. Co.*, 252 S.E.2d 565, 568 (S.C. 1979))); and *Walde v. Assoc. Ins. Co.*, 737 S.E.2d 631, 635 (S.C. Ct. App. 2012)("Policies are construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer." (citing *M&M Corp.*, 701 S.E.2d at 35)).

The "substantial compliance" threshold advocated by the court with respect to MedPro's policy is not enough when the *exclusion* of coverage is at stake. The

district court found coverage under MedPro's policy because it declined to "rigidly enforce" "the formalities of notice . . . to defeat the rights of the insured under a claims made policy." [JA0725: ¶ 8; *see also* JA0721-22 (citing with approval that courts have "been unwilling to impose strict compliance with substantive requirements of notice set forth in such policies where timely notice provided the carrier sufficient information")] The court premised its coverage finding on what it determined to be the true issue with regard to the insuring agreement – "Dr. Sutton provided MedPro with sufficient information to initiate a claims investigation and coverage and that preliminary investigation would have revealed the potential personal injury claim of Nathan Moore." [JA0720: ¶ 13; *see also* JA0724: ¶ 7] By viewing the information provided by Dr. Sutton against the backdrop of only ***substantial*** compliance with a reporting requirement, the court found that MedPro was on notice even though Dr. Sutton was unable to recall at the time she received the St. Francis Letter any details regarding Amy Moore's treatment or Nathan Moore's birth. [JA0723: ¶ 5] Putting aside whether the substantial compliance standard was correct in evaluating coverage under the FPIC policy, it was not a proper interpretation of the FPIC Policy ***exclusion.*** Substantial compliance to trigger notice under an insuring agreement is very different from substantial compliance with an exclusion that prevents coverage. Permitting something less than the "report" of a "medical incident" to satisfy the explicit

-24-

requirements of Exclusion 11(b) *for which FPIC bore the burden of proof* impermissibly tipped the scale in favor of FPIC in contravention of policy language and South Carolina law.  The district court erred as a matter of law when it applied its threshold for notice of a potential claim when determining whether Exclusion 11(b) applied, and judgment in favor of FPIC is due to be reversed.

### C.    The District Court Failed to "Strongly Construe" Exclusion 11(b) Against FPIC And Applied An Overly Expansive Reading Of The Exclusion Untethered To Its Actual Language

The district court not only relieved FPIC of its burden to prove the applicability of Exclusion 11(b), but it failed to construe the policy language "most strongly" against FPIC by adopting an overly expansive reading.  The court's interpretation, untethered to the actual language in the Policy and the facts adduced at trial, erroneously deprived Dr. Sutton of coverage.

### 1.    The Operative Facts Were Largely Undisputed And Prevented Application Of The Exclusion If Strongly Construed Against FPIC

A comparison of the court's summary judgment and trial orders confirms: factual determinations were not required for the court's analysis of Exclusion 11(b), and when properly construed against FPIC, Exclusion 11(b) does not apply.  Dr. Sutton has maintained all along, without dispute by FPIC,[4] that: (1) she called MedPro in 2008 to discuss an unusual letter informing her that the

---

[4] As noted earlier, MedPro – unlike FPIC – disputed the facts to which Dr. Sutton testified.

-25-

hospital received a records request [JA0135 (court summary judgment order quoting Dr. Sutton "'it was such an odd letter that she 'felt like [she] had to call Med Pro about it'")]; but (2) did not recall anything about the person whose records were requested, the services she received, or the outcome thereof. [JA0140 (court summary judgment order recounting Dr. Sutton's testimony that "she did not remember who Amy Moore was or whether she was an obstetrics patient" and "the only information she could have relayed to Med Pro was whatever appeared in the 2008 Letter")]

FPIC's summary judgment motion, in pertinent part, asked the court to interpret Dr. Sutton's call conveying the contents of the St. Francis Letter as a "reported . . . medical incident" precluding coverage under Exclusion 11(b). [JA0140]  But the court, "dr[awing] all reasonable interferences in favor of [non-movant] Dr. Sutton" in accordance with the summary judgment standard, found that it ***could not rule*** in favor of FPIC on the language of Exclusion 11(b) while viewing the facts from Dr. Sutton's perspective.  [JA0141 (characterizing the dispute about whether the call constituted a report as "an issue of material fact")]

At trial, the evidence remained consistent with the parties' earlier presentation, and the court – now free to credit to Dr. Sutton's testimony without the constraint of the summary judgment – found that Dr. Sutton "***credibly testified*** . . . . that she did not recall any details regarding the treatment rendered to Amy

Moore and . . . provided Med Pro the full extent of the information then available to her by reporting the contents of the letter." [JA0723 (emphasis added)][5] Inexplicably, the district court reversed course to hold that the same set of facts (now determined in Dr. Sutton's favor, not merely viewed as such) inured to FPIC's favor as a reported medical incident under Exclusion 11(b).

It was not the facts, but the district court's interpretation of the exclusionary language, that changed. When required to view the facts from Dr. Sutton's point of view on summary judgment, the court refused to conclude that her alleged call was the equivalent of a report of a medical incident under Exclusion 11(b). Yet, when the court relieved FPIC of its burden to show the Exclusion's applicability and failed to construe FPIC's language against it, the very same call transformed after trial into an exclusion-evoking medical incident report.

### 2. The Court Adopted An Overly Expansive View Of The Exclusion That Did Not Strictly Construe The Exclusion Against FPIC

As a matter of law, it was error for the district court to exclude coverage by finding that Dr. Sutton reported a medical incident to MedPro when she only conveyed the contents of a letter she received from the hospital stating that it had received a request for medical records [JA0158:12-14] and did not personally recall anything about the person whose records were requested or the treatment she

---

[5] [*See also* JA0726 (recounting in the context of FPIC's policy analysis that Dr. Sutton "did not remember the circumstances regarding the Amy Moore 2004 labor and delivery")]

provided [JA0159:5-6; JA0209:11-13; JA0234:16-18], much less an adverse outcome. [JA0255:17-24]

> ### a.   Dr. Sutton Did Not Report A Medical Incident; She Reported Only The Contents Of The St. Francis Letter

Crediting Dr. Sutton's testimony, as the district court did, Dr. Sutton could not have reported a medical incident to MedPro because she, by her own admission, did not provide any details beyond the sparse contents of the St. Francis Letter.   [JA0158:12-14]    Dr. Sutton admitted that she received no further communication from MedPro about the St. Francis Letter [JA0158:15-20], nor followed up with either MedPro or St. Francis. [JA0158:15-JA0159:4][6]

The FPIC Policy defines "medical incident" as "any act, error or omission in the providing of or failure to provide professional services to a patient by you or by persons described in the Individual Professional Liability Coverage Part for whom you are determined to be legally responsible."   [JA636]   In addition, the Policy treats as a "single medical incident" all "bodily injury(ies) caused by a course of treatment(s) of a . . . mother and fetus (or fetuses) from conception through postpartum care . . . ."   [JA637]   "Bodily injury," in turn, means "physical injury, sickness or disease; mental or emotional distress; or death sustained by a patient,

---

[6] Dr. Sutton did not believe she should take any other action because she did not view the St. Francis Letter as a notice of a potential claim [JA0233:11-16], and did not have any reason to believe that she would be sued for something that occurred in 2004. [JA0234:12-15]

which is neither expected nor intended from the standpoint of any Insured." [JA0636]

The St. Francis Letter did not identify an adverse outcome or describe any physical injury, sickness or disease, mental or emotional distress or death sustained by anyone, as the definition of "medical incident" requires. Indeed, Dr. Sutton expressly disclaimed awareness at that time of any acts, errors, omissions or injuries in connection with the labor and delivery of Nathan Moore, and FPIC produced no evidence to the contrary. [JA0255:17-24] Dr. Sutton testified repeatedly that she only was inquiring about an "unusual letter," that she was "[n]ot particularly concerned" about it, and that she did not discuss with MedPro any acts, errors or omissions in connection with Mrs. Moore's labor and delivery. [JA0157:20-JA0158:14] At that time, she did not even recall that a delivery occurred.

In *National Fire Insurance v. Bartolazo,* 27 F.3d 518 (11th Cir. 1994), the Eleventh Circuit considered whether an attorney's request for medical records sufficiently "allege[d] a medical incident" to trigger an exclusionary clause precluding coverage for a prior "claim," defined as "the receipt by you of a **demand for money** or services, naming you **and alleging a medical incident**." *Bartolazo,* 27 F.3d at 519 (emphasis added). After comparing the Exclusion's language to the attorney's letter, which identified the attorney as the patient's

-29-

attorney "in her claim for medical malpractice," the Court found that the Letter not only failed to make a "demand for money or services" but it failed to "allege a medical incident." *Bartolazo,* 27 F.3d at 519 ("The 1990 letter made no demand for money or services, nor did it allege a medical incident. The Letter merely requested Marsico's medical records and alluded to a claim for malpractice.").  As in *Bartolazo*, the context of an exclusionary provision dictates the court's perspective on the terminology – a notice of records request is not a *de facto* medical incident.

> **b.    The Policy Never Defines "Reported" And That Term Should Have Been Construed Against FPIC**

The district court found Dr. Sutton reported an incident without considering the fundamental question, "reported according to whose standards?"  The term "reported" is not defined in FPIC's policy, and the court never endeavored to define what constitutes "reported to prior insurer" other than to say "[t]he insured's personal knowledge or intent is not relevant to the prior reporting exclusion." [JA0727: ¶ 12]  Significantly, Dr. Sutton's call would not have qualified as a "report" of a potential claim under the express terms of FPIC's insuring agreement, which requires that all claims and potential claims be reported in writing. [JA0641]  It improperly expands the scope of the exclusion to say that a "report" that would not qualify as sufficient to trigger coverage under the FPIC Policy

would be sufficient to trigger an exclusion, which is supposed to be construed most strongly against FPIC as the insurer.

### c. Dr. Sutton Had No Memory Of A "Medical Incident" To Report

Strictly construing the Exclusion against FPIC, the insured must have at least known a medical incident was involved when the alleged "report" was made. Dr. Sutton's testimony never wavered: When she called MedPro to inquire about the St. Francis Letter, she did not even remember Amy Moore [JA0159:5-6] or Nathan Moore [JA0209:11-13; JA0234: 16-18], much less recall any adverse outcome. [JA0255:17-24] Indeed, Dr. Sutton could not recall *anything* about Amy Moore's treatment [JA00170:9-12] including whether she was an obstetrics or gynecological patient. [JA0209:8-10]

The St. Francis Letter simply "did not particularly concern" Dr. Sutton [JA0208:5-9; JA0157:17-21] because it was "common" for her patients to be involved in situations where a request for medical records is made, such as by a defense attorney in an automobile accident case. [JA0208:10- JA0209:2]  Even FPIC's representative, Laura Archer, agreed that a notification of a records request does not signal a malpractice investigation and may be completely unrelated to a malpractice claim. [JA0351:15-24]

Dr. Sutton called MedPro because "I wasn't sure what to do about it. It was just unusual. I mean, it said it was a routine, you know, review, and I wasn't really

-31-

sure what to make of it." [JA0169:21-JA0170:2; *see also* JA0157:25-JA0158:3 (testifying that she called MedPro "because it was an unusual letter that I hadn't had any familiarity with and I just didn't know what I should do with it, what it meant"); JA0232:24-JA-233:2 (referring again to the "unusual letter")]

Further, it is not surprising that the St. Francis Letter failed to trigger Dr. Sutton's memory regarding her 2004 treatment of Amy Moore or the circumstances of Nathan Moore's delivery. Dr. Sutton's interactions with Amy Moore after the delivery were encouraging, not alarming. Mrs. Moore, who was both an obstetrics and gynecological patient of Dr. Sutton and her practice [JA0524], never complained to Dr. Sutton about any treatment she received from her. [JA0230:24-JA0231:2]

Indeed, Mrs. Moore returned to Dr. Sutton after the delivery for further treatment and a tubal ligation. [JA0532-JA0533] And at that time Mrs. Moore told to Dr. Sutton that six-week old Nathan was "doing very well" and that "the pediatricians and the pediatric neurologist are hopeful that [he] will have little or no residual from presumed perinatal seizure disorder." [JA0532] Dr. Sutton considered Nathan's prognosis to be "excellent" [JA0231:10-13], and she harbored no concern about his long-term condition. [JA0231:3-5] As she explained at trial, babies with a delivery like Nathan's end up "perfectly okay" the "majority" of the

time.  [JA0209:14-21]  The idea that the St. Francis Letter related to any adverse outcome just "wasn't on [her] radar."  [JA0250:11-5; JA0251:18-22]

It was not until three years later, during a conversation with FPIC's claims director Eric Roberts, in 2011, after receipt of Nathan Moore's Notice of Intent to Sue, that Dr. Sutton thought she recalled "a records request several years previously," but "wasn't sure if it was the same patient."  [JA0156:10-15] Thereafter, Roberts mischaracterized this conversation in FPIC's favor when he wrote to MedPro requesting information about a "potential claim [Dr. Sutton] reported to MedPro regarding claimant Nathan Moore."  [JA0655]

Roberts represented that Dr. Sutton "personally recall[ed] reporting this Incident to MedPro as a precautionary measure sometime in 2007 when she was insured there" [JA0655; JA0155:22-25] – a portrayal Dr. Sutton vehemently denies.  [JA0155:22 – JA0156:8]  Dr. Sutton has maintained all along that she could not have "personally recall[ed] reporting this Incident to MedPro" because she did not recall an "incident" at all.  She had no recollection of Amy Moore or the circumstances surrounding Nathan Moore's birth and only called about an "unusual letter" – nothing more.

When the tables are turned and FPIC must interpret its own insuring agreement, it does not define "medical incident" with the same breadth that it advocates for Exclusion 11(b).  FPIC's policy expressly provides that it only

-33-

covers "damages because of bodily injury caused by a medical incident" if ***reported.*** [JA0639-JA0640 ("Coverage Provided To You"); JA0641 ("Claims Made and Reporting Requirements"); *see also* JA0636-637 (definitions of "claim" and "potential claim")] Yet FPIC's own representatives agreed that FPIC's policy ***does not require*** physicians to report every medical records request received. [JA0352:2-6 (Laura Archer); JA487:4-8 (Eric Roberts)] If a medical records request, or just the mere receipt of a letter stating that a medical records request was sent to another entity, was synonymous with "medical incident," then FPIC would require its insureds to report every medical records request received or about which the insured has information.[7]

As a matter of law, the district court erred when it excluded coverage by finding that Dr. Sutton reported a medical incident to MedPro. Construing the exclusion's language against FPIC as required by South Carolina law, and viewing the district court's factual determinations in accordance therewith, Dr. Sutton conveyed the contents of a letter she received regarding a records request sent to a hospital; she did not report a medical incident.

---

[7] Such a broad reading would only discourage an insured from contacting a carrier to seek advice for anything short of a defined "claim."

-34-

## CONCLUSION

For the foregoing reasons, the district court's judgment in favor of FPIC on Exclusion 11(b) is due to be reversed.

# REQUEST FOR ORAL ARGUMENT

Because of the novel issues presented in this appeal, Dr. Sutton respectfully requests oral argument.

Respectfully Submitted by,


 /s/ Oana D. Johnson
George J. Kefalos (Fed. Id. No. 2290)
Oana D. Johnson (Fed. Id. No. 11392)
GEORGE J. KEFALOS, P.A.
46-A State Street
Charleston, South Carolina 29401
(843)722-6612

*Counsel for Kyrsten E. Sutton, M.D*


October 21, 2013

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(E) OR 32(A)

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  Type-Volume Limitation: Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    ☒ this brief contains __**8,286**__ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    ☐ this brief uses a monospaced typeface and contains [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  Typeface and Type Style Requirements: A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 101/4 characters per inch).

    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using Microsoft __**WORD**__ [*identify word processing program*] in 14-point Times New Roman [*identify font size and type style*]; or

    ☐ this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

/s/ Oana D. Johnson
Attorney for Kyrsten E. Sutton, M.D

Dated: 10/21/13

-37-

## CERTIFICATE OF SERVICE

I certify that on <u>October 21, 2013</u>, the foregoing BRIEF OF APPELLEE

KYRSTEN E. SUTTON, M.D was filed on the CM/ECF system, which served

the document on all parties or their counsel.


/s/ Oana D. Johnson
George J. Kefalos (Fed. Id. No. 2290)
Oana D. Johnson (Fed. Id. No. 11392)
GEORGE J. KEFALOS, P.A.
46-A State Street
Charleston, South Carolina 29401
(843)722-6612

*Counsel for Kyrsten E. Sutton, M.D*